## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT YOUNGSTOWN

**NEXSTAR MEDIA, INC. GROUP,**
**D/B/A WKBN-TV,**                                    Civil Action No.:  4:24-cv-1415
545 East Carpenter Freeway, Suite 700
Irving, TX 75062

          *Plaintiff,*

       v.


**NATIONAL LABOR RELATIONS BOARD,**
**a federal administrative agency,**
1015 Half Street SE
Washington, DC 20570-0001

And

**JENNIFER ABRUZZO, in her official**
**capacity as General Counsel of the National**
**Labor Relations Board**
1015 Half Street SE
Washington, DC 20570-0001

And

**LAUREN M. MCFERRAN, in her official**
**capacity as Chairperson of the National Labor**
**Relations Board**
1015 Half Street SE
Washington, DC 20570-0001

And

**MARVIN E. KAPLAN, in his official capacity**
**as Board Member of the National Labor**
**Relations Board**
1015 Half Street SE
Washington, DC 20570-0001

And

**GWYNNE A. WILCOX, in her official
capacity as Board Member of the National
Labor Relations Board**
1015 Half Street SE
Washington, DC 20570-0001

And

**DAVID M. PROUTY, in his official capacity
as Board Member of the National Labor
Relations Board**
1015 Half Street SE
Washington, DC 20570-0001

And

**IVA Y. CHOE, in her official capacity as
Regional Director for Region 8 of the National
Labor Relations Board,**
1240 East 9th Street, Suite 1695
Cleveland, OH 44199-2086

And

**NORA MCGINLEY, in her official capacity
as Acting Regional Director for Region 8 of
the National Labor Relations Board,**
1240 East 9th Street, Suite 1695
Cleveland, OH 44199-2086

And

**JOHN/JANE DOES 1-10 in their capacity as
Administrative Law Judges of the National
Labor Relations Board**,

*Defendants*.

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

2

Plaintiff Nexstar Media Group, Inc., d/b/a WKBN-TV ("Nexstar"), brings this action against defendants National Labor Relations Board ("Board" or "NLRB"), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"), Board Member Marvin E. Kaplan ("Kaplan"), Board Member Gwynne A. Wilcox ("Wilcox"), Board Member David M. Prouty ("Prouty"), (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), Regional Director for Region 8 of the NLRB Iva Y. Choe, Acting and/or Former Acting Regional Director for Region 8 of the NLRB Nora McGinley ("McGinley"), and Administrative Law Judge ("ALJ") John/Jane Doe ("Doe") (collectively, "Defendants"), for declaratory and injunctive relief and states as follows:

## INTRODUCTION

1.      This action stems from an attempt by Defendants to subject Nexstar to an administrative proceeding, *Nexstar Media Inc. d/b/a WKBN-TV -and- Nat'l Ass'n of Broadcast Employees and Technicians – Commc'ns Workers of Am., AFL-CIO*, NLRB Case No. 08-CA-317529, in which legal remedies are sought without the benefit of a trial by jury.

2.      Defendants' actions unequivocally violate the Seventh Amendment of the United States Constitution.

3.      This action further stems from the unconstitutional structure of the Board and proceedings before the Board.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States of America. This Court has federal question jurisdiction pursuant to 28 *U.S.C.* § 1331 because of fundamental questions of the Board's ability to seek legal remedies without a trial by jury violates the Seventh

3

Amendment of the United States Constitution, as well as the unconstitutional structure of the Board and its proceedings.  *See e.g. Sec. and Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2128-2130 (2024).

5.     This Court also has federal question jurisdiction pursuant to 28 *U.S.C.* § 1331 because Nexstar alleges aspects of the NLRB's structure violate the Constitution.  *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

6.     This Court has authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 *U.S.C.* §§ 2201-2202, the Administrative Procedure Act, 5 *U.S.C.* §§ 701-706, Fed. R. Civ. P. 65, and this Court's inherent equitable powers.

7.     Venue is proper in this district under 28 *U.S.C.* § 1391(e)(1).  Defendants are officers of an agency of the United States acting in their official capacity; and a substantial part of the events or omissions giving rise to this claim occurred in Youngstown, Ohio, and Cleveland, Ohio, both within this district.   More particularly, the administrative proceeding whose constitutionality Nexstar challenges relates to Nexstar's operations at 3930 Sunset Boulevard, Youngstown, Ohio.   The administrative complaint alleges an unfair labor practice relating to the conditions of employment of Nexstar employee L.B.[1] at its Youngstown facility.

**PARTIES**

8.     Nexstar is a leading diversified media company that produces and distributes engaging local and national news, sports and entertainment content across its television and digital

---

[1]     The identity of this Nexstar employee is irrelevant to adjudication of this matter.  The employee is referred to by their initials.

platforms and owns America's largest broadcasting group comprised of top network affiliates, with 200 owned or partner stations in 116 U.S. markets reaching 220 million people.

9.      Nexstar is incorporated in Delaware, headquartered in Texas, and operates nationwide, including its operation of WKBN-TV in Youngstown, Ohio.

10.     Defendant National Labor Relations Board ("NLRB" or "the Board") is an administrative agency of the United States, headquartered in Washington, D.C.  The National Labor Relations Act ("NLRA"), 29 *U.S.C.* § 160, empowers the NLRB to "prevent any person from engaging in any unfair labor practice."

11.     Defendant Jennifer A. Abruzzo is General Counsel of the NLRB.  She is sued in her official capacity.

12.     Defendant McFerran is Chairperson of the NLRB.  She is sued in her official capacity.

13.     Defendant Kaplan is a Member of the NLRB.  He is sued in his official capacity.

14.     Defendant Wilcox is a Member of the NLRB.  She is sued in her official capacity.

15.     Defendant Prouty is a Member of the NLRB.  He is sued in his official capacity.

16.     Defendant Choe is Regional Director for Region 8 of the NLRB.  She is sued in her official capacity.

17.     Defendant McGinley is or was Acting Regional Director for Region 8 of the NLRB.  She is sued in her official capacity.

18.     Defendant John/Jane Doe is an Administrative Law Judge of the NLRB assigned to preside over NLRB proceedings against Nexstar, whose identity has not yet been disclosed to Nexstar.  John/Jane Doe is sued in their official capacity.

# FACTS

## A.     Defendants' Policy of Violating the Constitution

19.     On September 8, 2021, Defendant Abruzzo issued Memorandum GC 21-06 ("GC 21-06"), titled "Seeking Full Remedies."

20.     GC 21-06, among other things, instructs the NLRB's Regions to "seek compensation *for consequential damages, front pay,* and liquidated backpay in a combined complaint and compliance specification" pursuant to 29 *U.S.C.* § 160(c). *(emphasis supplied)*. *See* 29 *U.S.C.* § 160(c) (the NLRB may only remedy unfair labor practices by "tak[ing]…affirmative action including reinstatement of employees…"); *but see Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024), *quoting United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 544 (1940) ("'[t]he interpretation of the meaning of statutes, as applied to justiciable controversies,' [is] 'exclusively a judicial function'")

21.     On April 8, 2024, Defendant Abruzzo issued Memorandum GC 24-04 ("GC 24-04"), titled "Securing Full Remedies for All Victims of Unlawful Conduct."

22.     In GC 24-04, Defendant Abruzzo commended the NLRB's regions for having "done an excellent job" in following the instructions of GC 21-06.

23.     GC 24-04 expanded upon GC 21-06's use of the term "consequential damages" in relation to 29 *U.S.C.* § 160(c) as including:

> …[L]ost contributions to multi-employer pension funds; increases in the amounts of health insurance premiums, copays, deductibles, or co-insurance; loss of contributions already made to a retirement fund due to failure to complete a vesting period; lost anticipated earnings from already-accumulated retirement fund amounts; penalties imposed for early retirement fund withdrawal caused by cessation of participation; unreimbursed tuition payments, where that reimbursement was a part of the employee's compensation

6

package; unreimbursed web development, marketing, and business insurance costs made by an employee on commission in order to increase sales of the employer's product; job search costs, such as reimbursement of mileage and gas costs, car/ride service payments, job search app costs, and resume printing fees; day care costs; specialty tool costs; late fees and/or related accrued interest on payments of rent, utilities, mortgage, tax, auto loans and credit cards; bank overdraft fees; utility disconnection/reconnection fees; reductions in earnings and/or penalties resulting from a discharge dipping into savings or retirement funds to replace income lost; costs associated with loans and credit card advances; relocation/moving expenses; legal representation costs in eviction proceedings; expenses resulting from a change in immigration status; and salting income.

*But see Loper Bright Enter.*, 144 S. Ct. at 2258.

**B.    Nexstar's Bargaining Relationship with the Union**

24.    Nexstar and the National Association of Broadcast Employees and Technicians – Communications Workers of America, AFL-CIO ("Union") were parties to a collective bargaining agreement ("CBA") for the term of February 1, 2014 to January 31, 2018.

25.    Article VI, Section 3 of this CBA establishes:

The Company agrees to limit personal service contracts (PSCs) to TV Newspersons and Videojournalists earing at least 5% over scale. Execution of a PSC shall be a condition of employment.  Any PSC may not conflict with the minimum terms of the parties' collective bargaining agreement, except that the PSC may include restrictive covenants.

The Company will notify the Union at least seven (7) days in advance of any proposed signing of a PSC, except for prospective employees.  The Union will have the right to review the PSC in order to determine if there is a conflict between the PSC and the parties' collective bargaining agreement.  In the event of such review, the Union agrees that its terms shall remain confidential and shall not be disclosed except to the extent necessary to determine if such a conflict exists, or if needed as a part of the parties' grievance and arbitration procedure.

> If a TV Newsperson or Videojournalist is terminated for suitability
> or economic reasons any restrictive covenant shall be null and void
> on the date of termination.

26.     Following the expiration of this CBA, Nexstar and the Union mutually agreed that

it would be extended until a successor agreement could be reached.

27.     Nexstar and the Union were then parties to a CBA for the term of May 1, 2020 to

April 30, 2023.

28.     Article 6, Sections 3 and 4 of this CBA establish:

> The Company may enter into, and require as a condition of
> employment, a PSC with employees in the TV Newspersons and
> Videojournalists classifications.  Provided the employee is paid at
> least 5% above the minimum applicable rate and the PSC does not
> conflict with the minimum terms of the Agreement, except for the
> following…In the event of a conflict between the minimum terms
> of the Agreement and a PSC, the Agreement shall govern but will
> not void the remaining provisions of the PSC…This provision shall
> not require a TV Newsperson or Videojournalist not subject to a
> PSC at the time of ratification of this Agreement to enter into a PSC
> as a condition of employment…
>
> …The Company may enter into a PSC with employees upon mutual
> agreement between the Company and the employee provided the
> employee is paid at least five [percent] (5%) above the minimum
> applicable rate and the PSC does not conflict with the minimum
> terms of the Agreement….In the event of a conflict between the
> minimum terms of the agreement and a PSC, the Agreement shall
> govern but will not void the remaining provisions of PSC.

29.     On March 28, 2023, Nexstar and the Union began negotiating towards a successor

CBA.

30.     On or about April 27, 2023, prior to the expiration of the CBA, Nexstar inquired as

to whether the Union would again agree to extend the CBA while the parties negotiated toward a

successor.

8

31.    On April 28, 2023, Nexstar wrote to the Union, stating:

As we did last time we negotiated we would agree to extend the CBA while negotiating the successor.  We propose an extension with a seven (7) day notice to terminate.  I can draft up a formal agreement to this effect or let me know if this email suffices by return note.

32.    On April 30, 2023, the Union provided notice that:

The Union is not agreeable to extending the existing CBA at this time.

Moreover, the Union is not agreeable to extending the waiver of bargaining in Article 6 Sections 3 & 4 that permits the employer to enter into Personal Service Contracts (PSC's) *[sic]* with employees.

Existing PSC's *[sic]* shall remain in effect for their duration but no new PSC's *[sic]* may be entered into without the express approval of the Union.

33.    Nexstar acquiesced to the Union's request and lawfully withdrew a PSC offered to L.B.  *See Midwest Television, Inc. d/b/a KFMB Stations*, 349 NLRB No. 38 (NLRB Feb. 20, 2007).

**C.    The Union's ULP**

34.    On or about May 3, 2023, filed an Unfair Labor Practice Charge ("ULP") with Region 8 of the NLRB alleging that Nexstar violated the NLRA, 28 *U.S.C.* § 158(a)(3)&(5) with regard to the facts alleged in ¶¶ 24-33, above.

35.    In response to the NLRB's request for a response to the ULP, on January 2, 2024, Nexstar submitted its position statement and supporting evidence refuting the allegations in the ULP to the NLRB.

36.    On or about February 2, 2024, the Union filed an amended ULP.

37.    On or about February 21, 2024, the Union filed a second amended ULP.

**D.**     <u>**The NLRB's Administrative Complaints**</u>

38.     On May 23, 2024, Defendant McGinley issued an administrative complaint in response to the ULP, in NLRB Case No. 08-CA-317529, and a notice that an administrative hearing would occur before an Administrative Law Judge ("ALJ") of the NLRB on August 27, 2024.

39.     The administrative complaint, among other things, seeks the following legal remedy:

> …[M]ake employee [L.B.] whole, including but not limited to, by 1) rescinding any or all changes to [L.B.'s] terms and conditions of employment made without bargaining with the Union; 2) paying [L.B.] for wages and other benefits lost as result of Respondent moving [them] from full-time to part-time employment status on May 3, 2023 and any other changes to [their] terms and conditions of employment that were made by Respondent without bargaining with the Union; 3) ***reimbursement of direct and foreseeable consequential damages*** [L.B.] incurred as a result of the Respondent's unlawful conduct; and 4) offering [L.B.] her full time position back, or if that job no longer exists, offering [them] a substantially equivalent position, along with [their] seniority and all other rights.

*(emphasis supplied)*; *see Jarkesy*, 144 S. Ct. at 2141 (Gorsuch, J., concurring) (administrative proceedings cause a loss of "many of the procedural protections our courts apply," including the right to discovery *Fed. R. Civ. P.* 26(b)(1)).

40.     On June 6, 2024, Nexstar answered the administrative complaint, denying all allegations.

41.     On July 31, 2024, Nexstar moved for dismissal of the administrative complaint on summary judgment.

42.     In support of its motion for summary judgment, Nexstar presented the constitutional arguments set forth in Counts One to Four, below.

43.     Nexstar also presented arguments establishing that, pursuant the NLRB precedent established by *Midwest Television, Inc., d/b/a KFMB Stations*, 349 NLRB No. 38, (NLRB February 20, 2007), the conduct alleged in the administrative complaint does not establish a violation of the NLRA.

44.     On August 2, 2024, Defendant Choe issued an amended administrative complaint.

45.     Acknowledging some, but not all, of the original administrative complaint's constitutional defects, the amended administrative complaint now seeks the following legal remedy:

> …[M]ake employee [L.B.] whole, including but not limited to, by 1) rescinding any or all changes to [L.B.'s] terms and conditions of employment made without bargaining with the Union; 2) paying [L.B.] for wages and other benefits lost as a result of Respondent moving [them] from full-time to part-time employment status on May 3, 2023 and any changes to [their] terms and conditions of employment that were made without bargaining with the Union; and 3) offering [L.B.] [their] full time position back, or if that job no longer exists, offering [them] a substantially equivalent position, along with [their] seniority and all other rights.

46.     On August 13, 2024, Nexstar filed an amended motion for summary judgment in response to the NLRB's amended administrative complaint.

## <u>COUNT ONE</u>

**THE NLRB UNCONSTITUTIONALLY SEEKS LEGAL REMEDIES WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT**

47.     Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

11

48.     The Seventh Amendment of the United States Constitution establishes:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

49.     Upon information and belief, the "direct and foreseeable consequential damages" sought by the NLRB in the original administrative complaint exceed twenty dollars ($20.00).

50.     Upon information and belief, the legal remedies sought by the NLRB in the amended administrative complaint exceed twenty dollars ($20.00).

51.     As used in the Seventh Amendment, the term "common law" refers to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Parsons v. Bedford*, 28 U.S. 433, 446 (1830).

52.     Accordingly, the Seventh Amendment's requirement of trial by jury "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form they may assume." *Id.* at 447.

53.     The right to trial by jury in civil actions extends to causes of action created by Congress. *Tull v. United States*, 481 U.S. 412, 417 (1987); *see Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) ("[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care").

54.     Defendant NLRB has no mechanism to conduct a trial by jury. *See* 29 *C.F.R.* § 101.10(a) ("[a] duly designated administrative law judge presides over the hearing").

12

55.     Defendant NLRB Has no mechanism enabling a jury to act as factfinder and render an appropriate remedy, if any.  *See* 29 *C.F.R.* § 101.11(a) ("[a]t the conclusion of the hearing the administrative law judge prepares a decision stating findings of fact and conclusions…and making recommendations as to action which should be taken in the case"); *see also* 29 *C.F.R.* § 101.16(a)-(c) (where a NLRB Regional Director issues a "backpay specification," an administrative law judge alone determines the remedy).

56.     The Seventh Amendment extends to statutory claims if the claims are "legal in nature." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989).

57.     In determining whether a claim is legal, "the remedy is all but dispositive" and "money damages are the prototypical common law remedy" and "a monetary remedy is legal if it is designed to punish or deter the wrongdoer." *Sec. and Exh. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2129 (2024), *citing Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993), *further citing Tull*, 481 U.S. at 442 (1987); *see Thyrv, Inc. v. Nat'l Labor Relations Bd.*, 102 F.4th 727, 733, 737 (5th Cir. 2024) (NLRB's order that employer make employees "whole for all the losses incurred as a direct or foreseeable result of the layoffs" is "a novel, consequential-damages-like labor law remedy" and remedies sought by the NLRB are "draconian").

58.     Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act." *Black's Law Dictionary* 416 (8th ed. 2004); *see U.S. v. Burke*, 504 U.S. 229, 239-240 (1992) (consequential damages, "(*e.g.*, a ruined credit rating)," recompense for "traditional harms associated with personal injury"); *see further Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 649-650 (6th Cir. 1991) (consequential damage awards require direct proof of causation).

13

59.     "[C]onsequential damages have consistently been held to be a legal remedy" and *Kaiser v. Buckeye Youth Ctr.*, 812 F. Supp. 118, 121 (S.D. Ohio 1993); *see City of Sterling Heights, Mich. v. United Nat'l Ins. Co.*, 319 Fed. Appx. 357, 364 (6th Cir. 2009) ("[c]onsequential damages reimburse parties for the additional, reasonably foreseeable costs they incur as a result of a breach of contract").

60.     Here, "the remedy is all but dispositive" because "money damages are the prototypical common law remedy." *Jarkesy*, 144 S. Ct. at 2129, *citing Mertens*, 508 U.S. at 255.

61.     By seeking "consequential damages," the NLRB has exceeded its statutory authority to "take such affirmative action…[as] reinstatement of employees with or without back pay," and instead seeks to "punish culpable individuals" through a remedy designed to serve "either retributive or deterrent purposes" without the benefit of a trial by jury.  *See* 29 *U.S.C.* § 160(c); *see further Jarkesy*, 144 S. Ct. at 2129, *internal citations omitted*.

62.     Moreover, there exist at common law causes of action for wrongful termination in violation of public policy, breach of employment contract, and for third-party beneficiaries of contracts.  *Trout v. FirstEneregy Generation Corp.*, 339 Fed. Appx. 560, 566 (6th Cir. 2009), *citing Collins v. Rizkana*, 73 Ohio St.3d 65, 69 (Sup. Ct. Ohio 1995); *United Food and Commercial Workers Local 951 v. Mulder*, 31 F.3d 365, 370 (6th Cir. 1994) (employees are typically considered third-party beneficiaries of collective bargaining agreements between their unions and employers); *see Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 469 (1960) (promise of terms and conditions of employment in a collective bargaining agreement makes employees subject to agreement third-party beneficiaries of the agreement).

14

63. To prevent Nexstar from being subject to an unconstitutional remedy, this Court should stay or enjoin proceedings in *Nexstar Media Inc. d/b/a WKBN-TV -and- Nat'l Ass'n of Broadcast Employees and Technicians – Commc'ns Workers of Am., AFL-CIO*, NLRB Case No. 08-CA-317529, and declare that the NLRB may not seek consequential damages without a trial by jury.

64. Nexstar has a strong likelihood of success on this claim for the reasons detailed above.

65. If the NLRB is not so enjoined, Nexstar will suffer irreparable harm. *See Space Exploration Techs. Corp.*, No. 24-0203, 2024 WL 3512082, at *6 (W.D. Tex. Jul. 23, 2024), *citing Axon Enters., Inc. v. Fed. Trade Comm'n*, 598 U.S 175, 191 (2023), *further citing Collins v. Yellen*, 594 U.S. 220, 259-260 (2021).

66. If the NLRB, upon recommendation from the ALJ, issues a final order against Nexstar, the constitutional injury will likely be irremediable. *See id.*

67. The harm to Nexstar, in the event declaratory and injunctive relief is not granted, far outweighs any harm, or mere inconvenience, to the NLRB if such relief is granted. *See id.* at *7, *citing Nken v. Holder*, 556 U.S. 418, 435 (2009) (where the government is a defendant, the balance of the harms and public interest inquiries merge); *further citing League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (the government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action").

68. The grant of injunctive and declaratory relief on this claim will serve the public interest by protecting Americans' constitutional rights. *See id.*

## COUNT TWO

### BOARD MEMBERS ARE UNCONSTITUTIONALLY INSULATED FROM REMOVAL

69.     Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

70.     Article II of the Constitution states that the President must "take care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

71.     Article II's Appointments Clause provides the President authority to appoint officers and inferior offices of the United States.  *See* U.S. Const. art. II, § 2.

72.     The President has the power to appoint Board Members.  The NLRB consists of five (5) Board Members.[2]  With the advice and consent of the Senate, the President appoints these Board Members to staggered five-year terms.  The President designates on Board member to serve as Chairperson.  *See* 29 *U.S.C.* § 153(a).

73.     The NLRA limits the President's executive authority to remove Board Members because the President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."  *Id.*

74.     The President does not have the power to remove Board Members for other causes such as inefficiency - - an unconstitutional limit on the President's power.  *Id.*

75.     Only two (2) exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior

---

[2]     Currently, the Board only has four (4) sitting members.

16

officers with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020); *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

76.     These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *Id.*; *see Energy Transfer, LP v. NLRB*, No. 24-0198, 2024 WL 3571494, at *2 (S.D. Tex. Jul. 29, 2024) (removal provisions protecting NLRB ALJs violate Article II of the Constitution); *see further Space Exploration Techs. Corp. v. NLRB*, No. 24-0203, 2024 WL 3512082, at *3-*4 (S.D. Tex. Jul. 23, 2024) (removal provisions protecting Board Members and NLRB ALJs violate Article II of the Constitution) ("*SpaceX*").

77.     The Board exerts executive authority in multiple ways.  The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties."  29 *U.S.C.* § 154; *see SoundExchange, Inc. v. Librarian of Congress*, 571 F.3d 1220, 1226 (D.C. Cir. 2009, Kavanaugh, J., concurring) (the NLRB "exercises expansive executive authority").

78.     The Board also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts.  *See* 29 *U.S.C.* §§ 156, 160.

79.     The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of – indeed, under our constitutional structure they must be exercises of the "executive Power."  *Seila La LLC*, 591 U.S. at 197, n.2.

80.    But for these unlawful removal restrictions, Board Members would be subject to removal by the President.  *See SpaceX*, 2024 WL 3512082, at *4.

81.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now" injury ripe for judicial intervention.  *Id.* at *6, *citing Axon Enters., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

82.    Nexstar is entitled to declaratory relief sufficient to ensure that the administrative standards to which Nexstar is subject will be enforced only by a constitutional agency accountable to the Executive.  *Id.* at *5, *citing Free Enter. Fund v. PCAOB*, 561 U.S. 477, 508, 513 (2010).

83.    Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

84.    Nexstar bears a strong likelihood of success on the merits for the reasons articulated above.

85.    If the NLRB is not enjoined from proceeding against Nexstar in the administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

86.    Balancing of the equities tips in Nexstar's favor because, should the administrative proceeding move forward, Nexstar will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful."  *Axon Enter.*, 598 U.S. at 175; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing

18

on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

87.     It is in the public interest to remedy the unconstitutional removal procedures here to protect the constitutional rights of all Americans.

**<u>COUNT THREE</u>**
**ADMINISTRATIVE LAW JUDGES ARE**
**UNCONSTITUTIONALLY ISOLATED FROM REMOVAL**

88.     Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

89.     ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also SpaceX*, 2024 WL 3512082, at *3; *see further Westrock Servs., Inc.*, 366 NLRB No. 157, at *1 (NLRB Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers").

90.     Inferior officers are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Energy Transfer LP*, 2024 WL 3571494, at *2, *citing Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022), *aff'd on other grounds* 144 S. Ct. 2117 (2024).

91.     The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection Board]." 5 *U.S.C.* § 7521(a).

92.     Members of the Merit Systems Protection Board ("MSPB") are removable only for "inefficiency, neglect, of duty, or malfeasance in office." 5 *U.S.C.* § 1202(d).

93.     "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

94.     As ALJs can only be removed "for good cause" and the MSPB members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated from the President by at least two layers of for-cause removal protections. *Energy Transfer LP*, 2024 WL 3571494, at *2, *citing* 5 *U.S.C.* § 7521(a) and 5 *U.S.C.* § 1202(d).

95.     ALJs are insulated from the President by at least two layers of for-cause removal protections. *Id.*  As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enters. Fund*, 561 U.S. at 495-496.

96.     But for these unlawful removal restrictions, ALJs would be subject to removal by the President.

97.     The existence of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

98.     Again, being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

99.     Nexstar is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [Nexstar is] subject will be enforced by a constitutional agency accountable to the Executive." *Free Enters. Fund.*, 561 U.S. at 513.

100.    Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

101.    Nexstar bears a strong likelihood of success on the merits for the reasons articulated above.

102.    If the NLRB is not enjoined from proceeding against Nexstar in the underlying administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

103.    Balancing of the equities tips in Nexstar's favor because, should the NLRB administrative proceeding move forward, Nexstar will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 191; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

104.    It is in the public interest to remedy the unconstitutional removal procedures here to protect the constitutional rights of all Americans.

**COUNT FOUR**
**THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL**
**AUTHORITY AND POWERS VIOLATES ARTICLE III, § 1 OF THE CONSTITUTION**

105.　　Nexstar restates and incorporates by reference each and every allegation of the preceding paragraphs, as if fully set forth herein.

106.　　The NLRB is an executive agency.  29 *U.S.C.* § 153(a).  It is not part of the judiciary or legislature.

107.　　Article III of the Constitution establishes that judicial power belongs exclusively to the Judiciary.  *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

108.　　Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power."  *Id.* at 483, *citing U.S. v. Nixon*, 418 U.S. 683, 704 (1974), *internal citations omitted*.

109.　　As established in Count I, *infra*, the NLRB has taken an adjudicatory role by expanding its authority to award legal remedies (*i.e.*, money damages) under the guise of a 29 *U.S.C.* 160(c) remedy and making itself the body determining that award.  *See Thryv, Inc.*, 372 NLRB No. 22, at *13 (NLRB Dec. 13, 2022); *but see Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198 (1941) (the NLRB "does not exist for the adjudication of private rights"); *see further Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024), *quoting U.S. v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 544 (1940) ("'[t]he interpretation of the meaning of statutes, as applied to justiciable controversies,' [is] 'exclusively a judicial function'").

110.　　The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the Judiciary, not the Executive.

111.    By determining the amount of "consequential damages" in the underlying administrative proceeding, Defendants, as executives, usurp the role of the Judiciary.

112.    By articulating a new "novel" and/or "draconian" interpretation of 29 *U.S.C.* § 160(c), Defendants, as executives, act in a quasi-legislative role.  29 *U.S.C.* § 160(c) (the NLR is authorized to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without backpay"); *see Thryv, Inc.*, 102 F.4th at 733, 737; *c.f. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286, n.5 (2022), *citing* 42 *U.S.C.* § 2000e-5(g)(1) (equating the power to "order appropriate affirmative action" with the equitable powers of the Equal Employment Opportunity Commission).

113.    By promulgating this new remedy, the NLRB created its own law and its own method of determining a remedy, thus exercising executive, legislative, and judicial powers at once.  *See Loper Bright Enter.*, 144 S. Ct. at 2258 ("'[t]he interpretation of the meaning of statutes, as applied to judiciable controversies,' [is] 'exclusively a judicial function'"). *(internal citations and quotations omitted)*.

114.    "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Penn.*, 579 U.S. 1, 8 (2016); *see Calder v. Bull*, 3 U.S. 385, 388 (1798) (it would be "against all reason" to "entrust a Legislature" with the power to "mak[e] a man a Judge in his own case," and therefore "it cannot be presumed that [the people] have done it").

115.    Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

23

116.    Nexstar is entitled to declaratory relief to ensure that its due process rights are not violated.

117.    Without interim injunctive relief, Nexstar will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

118.    Nexstar bears a strong likelihood of success on the merits for the reasons articulated above.

119.    If the NLRB is not enjoined from proceeding against Nexstar in the underling administrative proceeding, Nexstar will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of separation of powers.

120.    A balancing of the equities tips in Nexstar's favor because, should the underlying administrative proceeding move forward, Nexstar will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful."  *Axon Enter., Inc.*, 598 U.S. at 179, 192; *see Robinson Freight Lines*, 117 NLRB 1483, 1485 (NLRB 1957) ("the Board alone is vested with lawful discretion to determine a proceeding, when once instituted, may be abandoned"); *see further NLRB v. UFCW Local 23*, 484 U.S. 112, 121 (1987) ("Once a hearing on the complaint begins, the Board's regulations do not permit the General Counsel to enter into an unreviewable settlement agreement").

## PRAYER FOR RELIEF

**WHEREFORE**, Nexstar hereby requests that this Court order the following relief and enter a judgment:

A.    Declaring that:

a.    The practice and/or policy of the NLRB to seek "consequential damages" as remedies for unfair labor practices in matters proceeding before an Administrative Law Judge violates the Seventh Amendment's guarantee of trial by jury for legal claims; and

b.    The practice and/or policy outlined in GC 21-06 and GC 24-04 violates the Seventh Amendment on the same grounds.

c.    The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 *U.S.C.* § 7521(a), are unconstitutional; and

d.    The statutes, regulatory provisions, guidance, and/or policies restricting the removal of Board Members, including 29 *U.S.C.* § 153(a), are unconstitutional.

B.    Preliminarily enjoining Defendants from subjecting Nexstar to administrative proceedings in which an unconstitutional remedy is sought pending final resolution of this action;

C.    Permanently enjoining Defendants from implementing or carrying out any policy and/or practice of unconstitutionally seeking legal remedies without a trial by jury;

D.    Preliminarily enjoining Defendants from subjecting Nexstar to unconstitutionally constructed administrative proceedings pending the final resolution of this action;

E.    Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

F.    Awarding Nexstar its costs and expenses incurred in bringing this action, including without limitation, reasonable attorneys' fees; and

G.    Awarding such other and further relief as this Court deems just, equitable, and proper.

25

Dated:  August 20, 2024

Respectfully submitted,

/s/ Robert A. McMahon
Robert A. McMahon (0064319)
Eberly McMahon Copetas LLC
2245 Gilbert Avenue, Suite 101
Cincinnati, OH 45206
(513) 533-3441
(513) 533-3554 Fax
bmcmahon@emclawyers.com


Dean Kpere-Daibo, Esq., *pro hac vice* pending
Constangy, Brooks, Smith & Prophete, LLP
680 Craig Road, Suite 400
St. Louis, MO 63141
(314) 338-3740
dkdaibo@constangy.com

*Attorneys for Plaintiff Nexstar Media Group, Inc.*
*d/b/a WKBN-TV*

## VERIFICATION OF COMPLAINT

I, CHARLES PAUTSCH, Associate General Counsel and Vice President of Labor Relations for Plaintiff Nexstar Media Group, Inc., being of full age, upon my oath, do hereby certify that I have reviewed this Verified Complaint and, upon information and belief, hereby submit that the allegations of fact contained herein are true to the best of my knowledge and belief. I understand that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.

Signed by:

B56394C62476430...

_____

CHARLES PAUTSCH

Dated:         August 19, 2024

11615029v2